Opinion issued February 27, 2003







            












In The
Court of Appeals
For The
First District of Texas
 

 
 
                                           NOS. 01-02-00475-CR
                                                     01-02-00476-CR
____________
 
RAMON MARTINEZ MARTINEZ, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the County Criminal Court at Law No. 5
Harris County, Texas
Trial Court Cause Nos. 1083620 & 1099665
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Ramon Martinez Martinez, guilty of the misdemeanor
offenses of driving while intoxicated and failure to stop and give information, which
were tried together. In each case, the trial court assessed appellant’s punishment at
180 days confinement, suspended the sentence, and placed appellant on community
supervision for one year.



          In his sole issue, appellant contends that he was denied effective assistance of
counsel in violation of the Sixth Amendment.


 We affirm.
Factual Background
          On October 20, 2001 at about 1:30 a.m., Julian Lopez was driving his car, with
two passengers, on Old Galveston Road in Harris County, Texas. As they drove past
the Apollo nightclub, another car, later identified as a purple Chevrolet Camaro,



while exiting the nightclub’s parking lot, struck Lopez’s car head-on. Lopez testified
that although he was unable to see the driver of the other car because his view was
obstructed by an air bag that deployed inside his car, he did see only one person, a
man wearing a red flannel shirt and dark pants, running from the other car after the
collision. When appellant was later apprehended and brought back to the scene,
Lopez identified him as the man he saw running from the other car.
          Joseph Chaffee, the backseat passenger in Lopez’s car, identified appellant at
trial as the man that he saw get out of the driver’s side of the Camaro


 after the
collision and run toward the nightclub. He testified that, on the night of the collision,
appellant was wearing a long-sleeved, red striped shirt and black pants.
          South Houston Police Officer Alfonso Alvarez testified that he was the first
officer to arrive at the scene, and he saw that the Camaro was “obviously” on the
wrong side of the road at the time of the collision. Chaffee described the driver of the
Camaro to Officer Alvarez, who communicated the description to other officers by
radio.
          Officer Alvarez also testified, without objection, that he spoke with an
unidentified female witness who told him that she saw the collision and the driver of
the Camaro “jump out” of his car and run toward the back of the nightclub. 
According to Officer Alvarez, after appellant was apprehended and brought back to
the scene, the witness identified appellant as the driver of the Camaro.
          South Houston Police Officer James Meadows testified that, after he received
Officer Alvarez’s description of the driver of the Camaro, he spotted appellant, who
fit the description, running and then crouching behind a fence about one block from
the scene. Appellant was wearing a red shirt and black pants. When he took
appellant into custody and back to the scene, Officer Meadows smelled a strong odor
of alcohol on appellant’s breath and noted appellant’s speech was slurred.
          When Officer Meadows returned appellant to the scene, Officer Alvarez noted
that appellant was wearing a red striped shirt and black pants, smelled strongly of
alcohol, had red bloodshot eyes, was staggering, and had slurred speech. Officer
Alvarez then administered a Horizontal Gaze Nystagmus (HGN) test on appellant to
determine if he was intoxicated. Officer Alvarez testified that appellant demonstrated
six “clues” and failed the HGN test. Officer Alvarez further testified that failing the
HGN test “is like 88 percentile that if they fail that test and they give all clues, those
six strong clues, that he is going to be intoxicated.” Based on his observations of
appellant, Officer Alvarez formed the opinion that appellant had lost the normal use
of his mental and physical faculties. According to Officer Alvarez, appellant refused
to perform any more tests or answer any questions, and Alvarez then took appellant
to the Houston Police Department’s central station for booking.
          Houston Police Officer Anthony Mock testified that, at the police station,
appellant refused to give a sample of his breath. Officer Mock also testified that he
smelled a strong odor of alcohol on appellant’s breath and that, in his opinion, based
on his observations of appellant, appellant appeared to be intoxicated.
          Appellant was next taken to a videotape room where Houston Police Service
Officer Paul Witherington, a civilian employee of the Houston Police Department’s
traffic and accident division, asked appellant to perform some motor skills exercises
while being videotaped. Appellant was asked to estimate a time lapse of 30 seconds
with his eyes closed and his head tilted back, perform a one-leg stand, and perform
a straight-line exercise. Appellant stated that he was recovering from burn injuries
on his legs and that his injuries might affect his performance of the exercises. After
the videotape was played at trial, Witherington testified that, in his opinion, appellant
did not follow the instructions for the tests “too well.” Specifically, Witherington
indicated that appellant performed the one-leg stand incorrectly after the officer
demonstrated the exercise for appellant, appellant incorrectly estimated a time lapse
of 30 seconds after only 13 seconds, and appellant counted to 30 seconds aloud when
the correct procedure was to count silently.
          The videotape revealed that, although appellant admitted that he had consumed
three 12-ounce cans of beer that evening, he denied that he had operated a motor
vehicle. Appellant also denied that he had been involved in a collision and stated that
he had been walking “about 30 minutes” when he was stopped by police. The State
also introduced into evidence, without objection, a photograph taken at the police
station showing appellant wearing a striped shirt.
          Appellant presented the testimony of Lucio Quintero, who rents a room from
and lives with appellant. Quintero testified that, on the night in question, appellant
had only consumed one beer in the three hours they spent together barbequing at their
residence. At about 10:00 p.m. that evening, Quintero let Raul Escobar borrow
Quintero’s Camaro, which he had purchased from appellant’s brother, to go to the
store to purchase more meat for the barbeque. Quintero saw appellant get in the
passenger seat of the car and leave with Escobar.
          Felicitas Garza and Escare Diaz testified that they saw appellant outside the
nightclub between 1:00 and 1:30 a.m. Garza testified that, as she and Diaz were
leaving the nightclub, she saw appellant get out of the passenger side of a purple car
in the parking lot. When appellant asked Garza and Diaz for “a light” and a cellular
phone, he did not appear intoxicated. Diaz testified that they directed appellant to a
phone behind the nightclub. Both Garza and Diaz testified that appellant was
wearing a brown shirt.
          Appellant testified that, after he left his house with Escobar to go to the store,
they drove around South Houston until sometime after 11:00 p.m. and then went to
the nightclub. Appellant testified that Escobar “was the only driver–I mean, he was
the only one that drove most of the night.” Appellant further testified that he and
Escobar went into the nightclub, where appellant had only a soft drink, and then left
after about 30 minutes. Appellant testified that Escobar was driving the Camaro
when they left the nightclub.
          Appellant testified that, after the collision, he got out of the car and approached
a man and a woman to ask them if they had a cellular phone so he could report the
accident. When they told him they did not, appellant asked the man and woman if the
phone on the side of the nightclub was working and they said that it might. Appellant
then asked them for a light for a cigarette. Appellant did not find any working phones
on the side of the nightclub and proceeded down the street to locate a phone but was
stopped by a policeman and handcuffed. Appellant also denied that he was wearing
a red striped shirt the night of the collision and testified that he was wearing a brown
shirt without stripes. When asked whether his burn injuries affected his ability to
perform the sobriety tests at the police station, appellant testified “I’m not sure, I’m
not a doctor.”
          On cross-examination, appellant testified that he had been at the club for
“about 30 minutes or so,” but he could not account for the discrepancy between the
time that he testified he arrived at the club, 11:00 p.m., and the time he was observed
outside the club by Garza and Diaz, between 1:00 and 1:30 a.m. Appellant also
conceded that, after the collision, he never checked to see if anyone was hurt in the
other car.
Ineffective Assistance of Counsel
          In his sole issue, appellant contends that he was denied his constitutional right
to effective assistance of counsel


 because his trial counsel (1) failed to timely object
to and preserve error regarding hearsay testimony and (2) failed to object to testimony
concerning a correlation between appellant’s performance on the HGN test and his
blood-alcohol content.
          To prove a claim of ineffective assistance of counsel, an appellant must
demonstrate that counsel’s representation fell below an objective standard of
reasonableness based on prevailing professional norms, and that, but for counsel’s
errors, there is a reasonable probability the result of the proceeding would have been
different. Strickland v. Washington, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064-65, 2068 (1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). A
“reasonable probability” is defined as a probability sufficient to undermine
confidence in the outcome. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999). Appellant has the burden to prove a claim of ineffective assistance of counsel
by a preponderance of the evidence. Id. An appellant must satisfy both prongs of the
Strickland test, or the claim of ineffective assistance will fail. 466 U.S. at 697; 104
S. Ct. at 2052; Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).
          In assessing whether a defendant received effective assistance of counsel, we
must look to the particular circumstances of each case and the totality of the
representation. Thompson, 9 S.W.3d at 813. A strong presumption exists that
counsel’s performance fell within the wide range of reasonable professional
assistance. Strickland, 466 U.S. at 689, 104 S. Ct. At 2065; Thompson, 9 S.W.3d at
813. Absent evidence in the record of counsel’s reasons for the challenged conduct,
a strategic motivation for counsel’s conduct is often assumed if any is possible under
the circumstances. Garcia, 57 S.W.3d at 440. An appellate court will not conclude
the challenged conduct constituted deficient performance unless the conduct was so
outrageous that no competent attorney would have engaged in such conduct. Id.
Testimony Regarding Female Witness
          Appellant first argues that his trial counsel was ineffective for failing to timely
object to and preserve error regarding testimony from Officer Alvarez about an
unidentified female witness who, according to Alvarez, identified appellant as the
driver of the Camaro. Appellant contends that such testimony was inadmissible
hearsay, and that his trial counsel should have properly objected.
          Rule 801(e)(1)(c) provides that an out-of-court statement regarding the
identification of a person, after the declarant perceived the person, is admissible if the
declarant testifies and is subject to cross-examination concerning the statement. TEX.
R. EVID. 801(e)(1)(c). Appellant argues that Officer Alvarez’s testimony was
inadmissible because the unidentified female witness did not testify at trial and was
not subject to cross-examination. Appellant also argues that his trial counsel erred,
during the cross-examination of Officer Alvarez, by waiving the issue when he
elicited further testimony concerning the identification.
          The unidentified female witness did not testify at trial. During the State’s
direct examination of Officer Alvarez, appellant’s trial counsel repeatedly objected
to Officer Alvarez’s testimony regarding statements made to him by the female
witness. The trial court overruled trial counsel’s first three objections, all of which
were based on hearsay grounds.


 Appellant’s trial counsel then made an unspecified
“running” objection, presumably also on hearsay grounds. Appellant’s trial counsel
then made an objection to Officer Alvarez’s testimony on the grounds that he was
“summarizing,” which was sustained. Officer Alvarez then gave the following
testimony regarding the unidentified female witness’s identification of appellant as
the driver of the Camaro:
          Q:      Did she see the driver?
A:Yes. She said she saw the–once the vehicle struck the other car,
the black Neon, that she saw the vehicle come kind of–after the
blow had struck, it kind of, the vehicle came back; and she saw
the guy, the driver, jump out.
 
Q: Now, did she later identify the defendant when he was brought
back?
 
          A:      Yes, ma’am.
 
Q: And did she say that it was the same guy she saw as the driver?
 
 A:She specifically said, there was no doubt in her mind that was
him.
 
          [Appellant’s counsel]:     I will make a running objection.
          THE COURT:                 That is sustained.
          The record is unclear concerning the basis for trial counsel’s “running
objection.” Further, to properly preserve an issue for appeal, an appealing party must
make a timely, specific objection at the earliest possible opportunity and must pursue
the objection to an adverse ruling, thereby exhausting any trial court remedies. Tex.
R. App. P. 33.1; Dixon v. State, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998). The
proper method for pursuing an objection to an adverse ruling is to (1) make an
objection, (2) request an instruction to disregard, and (3) make a motion for a mistrial. 
Koller v. State, 518 S.W.2d 373, 375-76 n.2 (Tex. Crim. App. 1975).
          Here, although the objection to the officer’s testimony was sustained, counsel
should have pursued the objection to an adverse ruling to properly preserve possible
error for review. See Dixon, 2 S.W.3d at 265. The record does not reflect trial
counsel’s reasons, if any, for not requesting an instruction to disregard after the trial
court sustained his objection concerning the identification testimony.
          During his cross-examination of Officer Alvarez, appellant’s trial counsel
elicited the following testimony from Officer Alvarez:
          Q:      And at what point did you administer the HGN test?
A: When they already confirmed that was him. They all pointed –
          Q:      Who?
A:The witness and the actual – the witness pointed out that was him.
She was positive, no doubt in her mind. That’s what she said.
 
Q:Okay. So based solely on that witness’ information, that’s the
sole reason –
 
A: The witness and the other passenger also is the one that said that
was him.

          It is well-established that the admission of the same evidence, without
objection, waives any previously stated objections to the evidence. Massey v. State,
933 S.W.2d 141,143 (Tex. 1996). Thus, by eliciting hearsay testimony from Officer
Alvarez, appellant’s trial counsel waived any error he may have preserved regarding
such testimony.
          Assuming that appellant’s trial counsel’s performance was deficient for failing
to properly preserve error concerning, and then eliciting, the above-referenced
hearsay testimony, the record indicates that the State presented other evidence at trial
identifying appellant as the driver of the Camaro. Lopez, the driver of the car struck
by the Camaro, identified appellant as the man he saw wearing a red shirt and dark
pants running from the Camaro after the accident. Chaffee, the backseat passenger
in Lopez’s car, identified appellant at trial as the man he saw get out of the driver’s
side of the Camaro following the accident and run toward the nightclub. Chaffee also
testified that, on the night of the collision, appellant was wearing a long-sleeved, red
striped shirt and black pants. Moreover, appellant’s own testimony that he was not
the driver of the Camaro at the time of the collision was impeached by (1) his
statements to Public Service Officer Witherington that he was not involved in any
automobile collision and had been walking for “about 30 minutes” when he was
apprehended and (2) the photograph, taken at the police station, of appellant wearing
a striped shirt, contrary to his trial testimony.
          In light of this evidence, we cannot conclude that there is a reasonable
probability that, but for trial counsel’s errors the result of the proceeding would have
been different.
Testimony Regarding HGN Test
          Appellant also contends that his defense counsel was ineffective in failing to
object to Officer Alvarez’s testimony correlating appellant’s performance on the
HGN test to a specific blood-alcohol content.
          An officer may testify about a defendant’s performance on an HGN test,
however he may not correlate the defendant’s performance to a precise blood alcohol
content. Emerson v. State, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994). Therefore,
an officer may testify concerning the qualitative results of the HGN test, but not the
quantitative results. Id.; Youens v. State, 988 S.W.2d 404, 406 (Tex. App.—Houston
[1st Dist.] 1999, no pet.). An officer may testify that, in his opinion, a suspect was
under the influence of alcohol, but may not testify to that suspect’s exact blood-alcohol content. Youens, 988 S.W.2d at 406. The testimony at issue here is Officer
Alvarez’s statement correlating appellant’s poor performance on the HGN test that
“it’s like an 88 percentile that he is already above .08.”
          In Youens, the defendant was involved in a car collision, and the officer who
came to the scene of the collision smelled alcohol on the defendant’s breath. 988
S.W.2d at 405. When the officer noticed the defendant “fumble” with her wallet, he
became suspicious of the defendant’s sobriety. Id. The officer then administered
three field sobriety tests, including the HGN test, and the defendant failed all three
tests. Id. At trial, the officer testified that if the defendant had been given an
intoxilizer at the time of the offense, her blood alcohol concentration “would have
been at least .10.” Id. at 405-06. This Court held that, although the officer should
not have given his opinion about the defendant’s quantitative blood alcohol content
based on the HGN test, the defendant’s objection at trial was not specific enough to
preserve error for review. Id. at 406.
          As in Youens, appellant’s trial counsel should have objected to Officer
Alvarez’s testimony correlating appellant’s failure on the HGN test to a high
probability of a specific blood-alcohol content. However, the record indicates that
the State presented additional evidence regarding appellant’s intoxication on the night
of the collision. Officers Alvarez, Meadows, and Mock all testified that appellant
smelled of alcohol. Officer Alvarez noted that appellant had red, bloodshot eyes, was
slurring his speech, and was staggering. Officer Meadows also noted that appellant’s
speech was slurred. Officer Mock testified that he thought appellant was intoxicated
when he arrived at the police station. Public Service Officer Witherington testified
that appellant performed poorly on the motor-skill exercises at the police station. 
Appellant also admitted that he had consumed three beers on the night of the
collision.
          Assuming appellant’s trial counsel was deficient in failing to object to Officer
Alvarez’s testimony regarding a correlation between appellant’s performance on the
HGN test and a specific blood-alcohol content, given the other evidence of
appellant’s intoxication presented, we cannot conclude that there is a reasonable
probability that, but for counsel’s deficient performance, the results of the proceeding
would have been different. Therefore, we hold that appellant has not met the second
prong of the standard set forth in Strickland to prevail on his claim of ineffective
assistance of counsel.
          We overrule appellant’s sole issue.
Conclusion
          We affirm the judgments of the trial court.
 

                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Hedges, Jennings, and Alcala.

Do not publish. Tex. R. App. P. 47.2(b).